# IN THE UNITED STATES COURT OF APPEALS
## FOR THE SEVENTH CIRCUIT

STANFORD CLACKS,

      Plaintiff/Appellant,

          v.

KWIK TRIP, INC.,

      Defendant/Appellee.

---

**Appeal From the United States District Court
For the Western District of Wisconsin
Case No.: 21-cv-611-jdp
Honorable Judge James D. Peterson**

---

# REPLY BRIEF OF
# PLAINTIFF-APPELLANT STANFORD CLACKS

---

HANSON LAW GROUP LLP
Stephen C. Harkess
1000 Hart Rd. Suite 300
Barrington, IL 60010
(720) 933 0444
Attorney for Plaintiff-Appellant

# TABLE OF CONTENTS

TABLE OF CONTENTS ............................................................................i

TABLE OF AUTHORITIES..................................................................ii

ARGUMENT......................................................................................... 1

   I. The District Court erred in rejecting Clacks's Declaration........................... 1

     A.  The "sham affidavit" rule does not apply where Clacks's later Declaration did not directly contradict his earlier deposition testimony. ........................................................................................ 1

     B.  Clacks has always maintained that his Declaration is accurate; he has not waived his opposition to the application of the "sham affidavit" rule. .................................................................... 6

   II. Clacks presented sufficient evidence that Kwik Trip had knowledge of the pervasive racial abuse within the company and failed to take prompt action. . ........................................................................... 9

   III. Clacks did not resign or refuse to return to work. ..................................... 11

     A. Kwik Trip mischaracterizes Clacks's deposition testimony. ............ 12

     B. *Pollock* is easily distinguished from the present case. ...................... 15

CONCLUSION ................................................................................. 17

CERTIFICATION ............................................................................. 19

PROOF OF SERVICE......................................................................... 20

# TABLE OF AUTHORITIES

## Cases

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) .......................................... 15

*Arendt v. Vetta Sport*s, *Inc.*, 99 F.3d 231 (7th Cir. 1996) ...................................... 8

*Betaco, Inc. v. Cessna Aircraft Co.*, 32 F.3d 1126 (7th Cir.1994) ........................ 15

*Boyers v. Texaco Refining and Marketing, Inc.*,

      848 F.2d 809 (7th Cir. 1988) .......................................................................... 9

*Castro v. DeVry Univ., Inc.*, 786 F.3d 559 (7th Cir. 2015) .............................. 2, 4-6

*DeValk Lincoln Mercury v. Ford Motor Co.*,

      811 F.2d 326 (7th Cir. 1987) .......................................................................... 8

*Flannery v. Recording Industry Ass'n of America*,

      354 F.3d 632 (7th Cir.2004) .......................................................................... 5

*Joll v. Valparaiso Comty. Schs.*, 953 F.3d 923 (7th Cir. 2020) ............................. 15

*Keck Garnett & Assoc., Inc. v. Nextel Commc'ns, Inc.*,

      517 F.3d 476 (7th Cir. 2008) .......................................................................... 8

*Maust v. Headley*, 959 F.2d 644 (7th Cir. 1992) ..................................................... 8

*McKensie v. Illinois Dep't of Transp.*, 92 F.3d 473 (7th Cir 1996) ................. 10-11

*Narducci v. Moore*, 572 F.3d 313 (7th Cir. 2009) ................................................... 7

*Nichols v. Michigan City Plant Planning Dep't*,

      755 F.3d 594 (7th Cir. 2014) .......................................................................... 8

*Payne v. Pauley*, 337 F.3d 767 (7th Cir. 2003) ..................................................... 14

*Pollock v. Manpowergroup US, Inc.*,

      18-CV-107, 2019 WL 6117619 (E.D. Wis. Nov 18, 2019) ........................ 14

*Sarsha v. Sears, Roebuck & Co.*, 3 F.3d 1035 (7th Cir.1993) ............................... 15

*Saxton v. American Tel. & Tel. Co.*, 10 F.3d 526 (7th Cir. 1993) .................... 10-11

## Statutes

42 U.S.C. § 1981 .......................................................................................... 9

Title VII of the Civil Rights Act of 1964 as amended in 1991 ................................. 9

## ARGUMENT

The District Court abused its discretion in applying the "sham affidavit" rule to make, in effect, a credibility determination where there was no clear contradiction between Clacks's statements during his deposition testimony and his sworn Declaration. Similarly, the District Court failed to properly review the evidence in the light most favorable to the non-moving party when determining that Clacks had refused to return to work following Kwik Trip's investigation. There are disputed issues of material fact which preclude summary judgment and require trial.

## I. The District Court erred in rejecting Clacks's Declaration.

The District Court improperly rejected portions of Clacks's sworn Declaration even when there was no direct contradiction between Clacks's testimony at his deposition and his declaration. In doing so, the District Court engaged in the type of credibility analysis that is impermissible at the summary judgment stage. The "sham affidavit" rule relied upon by the District Court is aimed at preventing a litigant from avoiding summary judgment by contradicting his own evidence, not to allow the District Court to make credibility judgments where factual disputes remain.

### A. The "sham affidavit" rule does not apply where Clacks's later Declaration did not directly contradict his earlier deposition testimony.

Kwik Trip asserts that Clacks was asked specific questions regarding the timing and content of any complaints regarding Roerkohl and Nechkash and that he stated that he complained to Clements one time about Roerkohl and one time about Nechkash. [Appellee's Brief, 20-21.] However, a review of the actual testimony shows that this is a

mischaracterization of the testimony and makes clear that Kwik Trip's attorney looked for answers they liked and then went no further.

Kwik Trip states that Clacks testified that "he complained to Clements one time about Roerkohl on or about July 25, 2018…" [Appellee's Brief, 20-21, *citing* R. 52 at 57-58, 61-62.[1]] But that is untrue. That is not what Clacks said at his deposition, according to the transcript – including the sections Kwik Trip cites. Kwik Trip fails to give any line citations for its assertion that such testimony is somewhere on those four pages. Still, it does not take long to verify that Clacks never testified that he only discussed Roerkohl at "one time" or on a "single" occasion, or even that any such conversation took place on July 25, 2018. [*See* Clacks Deposition (R. 52), 57-58, 61-62 (the pages that Kwik Trip vaguely cites).] That date does not appear on any of those four pages. [*Id.*] Despite Clacks clearly noting this issue in his opening brief, Kwik Trip utterly fails to point to any deposition testimony that so clearly "contradicts[s]" his later declaration "as to be entitled to zero weight in summary-judgment proceedings." *Castro v. DeVry Univ., Inc.*, 786 F.3d 559, 571 (7th Cir. 2015).

Clacks's actual deposition testimony was that he complained about Roerkohl to Clements [Clacks Deposition, 57:19-22], further adding that Roerkohl was not replaced as Clacks's trainer until Roerkohl twice drove past Clacks refusing to pick him up for the shift. [*Id.* at 62:3-11.]

---

[1] Kwik Trip incorrectly cites this as "D." instead of "R."

As outlined in the Opening Brief, the deposition questioning jumped back and forth between discussions of the actions of the trainers, Nechkash and Roerkohl, and questions about what was reported to Kwik Trip managers. Little effort was made to determine the time-period over which events took place. Clacks was not asked to pinpoint the dates or even the number of occasions on which he complained to Clements. Kwik Trip never asked for the date of the conversation with Clements or whether all discussion regarding Roerkohl's activities took place in a single conversation.

Clacks did his best to answer the questions he was asked, as was his duty as the deponent. But he had no duty to answer questions that were not asked, or to volunteer information about timing or numerosity of his complaints when he was not asked about timing or numerosity.

It is equally impossible to find a quote to support Kwik Trip's assertion that Clacks "complained to Clements one time about Nechkash on or about August 17, 2018…" [Appellee's Brief, 21 (*citing* Clacks Deposition, 62:23-24, 64:1-4, 70-73).] That is not part of the deposition testimony. This time Kwik Trip provides some line citations, but still, that purported testimony is simply not there.

Clacks was asked if he reached out to Clements regarding Nechkash and what Clacks told him. [Clacks Deposition, 70:18-71:12.] Clacks was never asked whether his conversations with Clements took place on only one day, or on what date(s) the conversations took place. Clacks testified that he gave Clements much more detail about Nechkash's abuse because he had just had issues with his previous trainer and needed

Clements to understand what was going on. [*Id.* at 71:8-12.] It would be baseless to assume from this testimony that there was only a single conversation. That is not what Clacks said.

Clacks cannot be held responsible for Kwik Trip's failure to ask about the dates or number of different occurrences of these conversations. If Kwik Trip wanted to nail down a timeline or establish how many times Clacks had discussed his training with Clements, it was incumbent upon Kwik Trip (via its attorney asking questions at Clacks's deposition) to ask those questions. When Kwik Trip phrased its question "What did you tell Sean about Brett?" [Clacks Deposition, 70:20], the response received might not include a breakout of every conversation on the topic. Clacks answered with his personal knowledge about what he told Sean. But Clacks was not asked, and thus he was not obligated to testify, about *when* he told Sean about Brett.

"What did you tell Sean about Brett" and "*when* did you tell Sean about Brett" are different questions. Asking "*how many times*" or "*on how many separate days*" might have clarified the issue. Kwik Trip could have asked if those conversations occurred "*on July 25, 2018*" or the like. But Kwik Trip asked none of those italicized questions. That is not Clacks's fault, and this certainly should not rob Clacks of his right to a trial regarding the serious discrimination that he suffered.

This Court must reverse the district court because Clacks's Declaration is not a sham. To reach this conclusion, the Court need only follow the lead of the *Castro* decision, where the key deposition question was whether a document was "an accurate account of the interaction," and the plaintiff testified that it was "inaccurate" and then outlined some of the reasons that the plaintiff contested its accuracy. *Castro*, 786 F.3d at 571. The

plaintiff's later affidavit noted additional inaccuracies he noticed in that document. *Id.* The trial court found those additions to be subject to the "sham affidavit" rule, but this Court reversed. *Id.* The *Castro* court emphasized that "[the plaintiff] was not asked whether he had described all the inaccuracies with the written statement. Without that question having been asked and answered to ensure that his deposition testimony exhausted his memory of the subject, his later declaration identifying other inaccuracies simply did not contradict any specific testimony in his deposition." *Id.*, *citing Flannery v. Recording Industry Ass'n of America*, 354 F.3d 632, 638 (7th Cir. 2004). The *Castro* court further summarized the Court's earlier *Flannery* decision: "explaining that a 'contradiction' exists only when the statements are 'inherently inconsistent,' not when the later statement "merely clarifies an earlier statement which is ambiguous or confusing.'" *Id.*

Kwik Trip's question "What did you tell Sean about Brett?" does not ask about the number of conversations at all. It is unreasonable to stretch that question to draw conclusions about whether there were different instances in which "you t[old] Sean about Brett," or about the date(s) of those conversations. Even if the question were to be so stretched, Clacks did not say in his answer that there was only one such instance, occurring on only one day. Thus, the question was at best "ambiguous or confusing" as to whether it was asking Clacks to testify about the number of conversations or the date(s) thereof. As such, there is no "contradiction;" Clacks's Declaration and deposition testimony are not "inherently inconsistent" as would be required to apply the "sham-affidavit" rule.

The most important takeaways from *Castro* are the cautions it provides with respect to the application of the "sham-affidavit" rule. The *Castro* court was clear in its holding

5

that "summary judgment is not a tool for deciding questions of credibility." *Id*. Though the district court apparently would find it incredible for Clacks to have testified as he did at his deposition but later testify as to the dates of his conversations, that credibility determination is impermissible in the summary-judgment process.

### B. Clacks has always maintained that his Declaration is accurate; he has not waived his opposition to the application of the "sham affidavit" rule.

In the trial court, Kwik Trip's Reply Brief is the first time that it argued for the "sham affidavit" rule to apply. [R. 59, 2-4.] A response brief comes before a reply, so obviously Clacks could not have argued against application of the "sham affidavit" rule in his Response Brief. Still, in its Response Brief in this appeal, Kwik Trip argues that Clacks somehow waived its argument against application of the "sham affidavit" rule.

There is no legal support, statutory or case law, which supports Kwik Trip's argument that Clacks waived his challenge to the application of the "sham affidavit" argument that Kwik Trip did not raise until its reply in support of summary judgment.

In an attempt to support the novel argument that a party can be found to waive arguments not raised in response to an argument in a reply brief (to which no additional response is usually permitted), Kwik Trip states that Judge Peterson's Judge-Specific Procedures explicitly allow for a sur-reply "in certain circumstances." [Appellee's Brief, p. 18, n. 7.] Kwik Trip fails to cite Judge Peterson's written procedure on the topic, probably because that Standing Order does not truly support Kwik Trip's position.

Judge Peterson's provision regarding summary judgment[2] provides as follows:

### IV. A sur-reply by responding party
A responding party may not file a sur-reply without first obtaining permission from the court. The court permits sur-replies only in rare, unusual situations.

Kwik Trip provides no support for its assertion that this case meets Judge Peterson's definition of "rare, unusual situations." The general rule is that sur-replies are not permitted. More to the point, Kwik Trip provides no support for its position that a party is deemed to waive any objection to arguments raised for the first time in a reply brief, simply by not requesting and being granted leave to file a sur-reply brief.

In fact, the rule is usually the opposite of what Kwik Trip argues: a party is generally barred from raising an argument for the first time in its reply brief. *Narducci v. Moore*, 572 F.3d 313, 324 (7th Cir. 2009). If this rule were to apply, Kwik Trip would be barred from makings its new argument – the argument in support of the "sham affidavit" rule – for the first time in its reply brief. However, case law makes clear that the reply can properly oppose or attack arguments or other materials included in the response brief, which below would have included Clacks's Declaration and thus the potential application of the "sham affidavit" rule.

The "sham affidavit" rule should not apply because Clacks's Declaration was far from a "sham," as detailed above. Kwik Trip was within its rights to argue for the application of that rule in its reply brief, but that does not mean that Clacks was required

---

[2] These Judge-Specific Procedures are outlined on the District Court's website as "Attachments to the Pretrial Conference Order in Cases Assigned to Judge Peterson" at https://www.wiwd.uscourts.gov/judge-specific-procedures.

to seek leave to file a sur-reply or to have addressed the issue in his response brief by somehow guessing that the argument would be coming in Kwik Trip's reply. There is no support for the argument that Clacks somehow conceded the application of the "sham affidavit" rule simply because it was first raised in a reply brief and no further briefing occurred thereafter.

Kwik Trip does cite some cases on the general law of waiver, but none apply any sort of waiver or forfeiture in the circumstances presented here. *Arendt v. Vetta Sport*s, *Inc.*, 99 F.3d 231 (7th Cir. 1996) involved the plaintiff's claim that the wrong statute of limitation period was applied to one of her claims, but she never argued that position in the trial court. In *Maust v. Headley*, 959 F.2d 644 (7th Cir. 1992), the appellate court took the time to reject a potential argument that the plaintiff did not make before the trial court or the court of appeals, having decided to pursue his claim on other grounds (which ultimately failed). *DeValk Lincoln Mercury v. Ford Motor Co.*, 811 F.2d 326 (7th Cir. 1987) is a case where the plaintiff argued, for the first time on appeal, that they were not bound by terms of a contract because of the Defendant's breaches. *Keck Garnett & Assoc., Inc. v. Nextel Commc'ns, Inc.*, 517 F.3d 476, 487 (7th Cir. 2008) prohibited a plaintiff from attempting to revive a claim on appeal that it failed to defend in response to a motion for summary judgment. Finally, *Nichols v. Michigan City Plant Planning Dep't*, 755 F.3d 594, 600 (7th Cir. 2014) found that the pro se plaintiff did *not* waive his claim by failing to clearly assert it in response to a motion for summary judgment as the necessary elements of the claim were discernable by the trial court. There is not a single case holding that a party concedes

an argument raised by the opposing party in their reply brief if they fail to challenge the assertion in a sur-reply brief.

In discussing the waiver rule, the Court of Appeals in *Boyers v. Texaco Refining and Marketing, Inc.*, 848 F.2d 809, 812 (7th Cir. 1988) stated that the rule is essential in order "'that parties may have the opportunity to offer all the evidence they believe relevant to the issues ... [and] in order that litigants may not be surprised on appeal by final decision there of issues upon which they have had no opportunity to introduce evidence.'" Kwik Trip can hardly claim that it lacked an opportunity to introduce evidence on an issue that Kwik Trip itself introduced or that it would be surprised for the issue to be relevant to the appeal.[3]

In sum, Clacks did not waive his argument in favor of his Declaration and against application of the "sham affidavit" rule.

## II. Clacks presented sufficient evidence that Kwik Trip had knowledge of the pervasive racial abuse within the company yet failed to take prompt action.

Only the question of employer liability is at issue in this appeal because that was the basis upon which the District Court granted summary judgment in Kwik Trip's favor. Kwik Trip notes that it has not conceded the other elements of a claim under Title VII or Section 1981, but that simply means that those issues are disputed and must be addressed at trial after remand. The question of whether Kwik Trip acted promptly to address the

---

[3] *Boyers* also states that there is an exception to the rule that an issue cannot be raised for the first time on appeal in rare cases involving a "jurisdictional question or if justice demands flexibility." *Boyers*, 848 F.2d at 812. If there were actually a rule that prohibits a challenge to a legal argument made by an opponent in a reply brief, as Kwik Trip suggests, it would seem that would be a case where "justice demands flexibility."

harassment Clacks endured when Supervisor Clements was informed of it is also a disputed fact that is properly left to a jury.

"An employer's response to alleged instances of employee harassment must be reasonably calculated to prevent further harassment under the particular facts and circumstances of the case at the time the allegations are made." *McKensie v. Illinois Dep't of Transp.*, 92 F.3d 473, 480 (7th Cir 1996).

The harassment that Clacks reported to Clements was severe, pervasive, and outrageous. He was repeatedly insulted and demeaned by the trainers that Kwik Trip had assigned to train him, and he was required to spend hours each day in the cab of a truck with his tormentors. These circumstances place this case in a different league than the cases Kwik Trip cites in support of its contention that allowing the harassment to continue for weeks before finally allowing Clacks to test out with another trainer was justified.

In *McKenzie*, the court reviewed allegations that a coworker made three offensive comments over the course of two and a half months. *Id.* at 478. Once these comments were reported by the plaintiff, the employer acted within 10 days to address the offending employee's behavior. *Id.* at 481.

In *Saxton v. A.T.&T. Co.*, 10 F.3d 526, 535 (7th Cir. 1993), the court found that nearly a year had passed since Saxton had rejected her supervisor's advances before she reported the incident to AT&T and the supervisor had long since stopped pursuing her. Under those circumstances, taking several weeks to investigate and then transfer the offender from the department was seen to be timely. *Id.*

In both cases, the Court of Appeals noted that the actual harassment was insufficient to establish a hostile work environment, but that, if it were, the employer acted promptly under the circumstances to rectify the issue. The key issue is the sufficiency of the response "under the under the particular facts and circumstances of the case." *McKensie*, 92 F.3d at 480, s*ee also Saxton*, 10 F.3d at 535 ("in view of the fact that nearly a year had elapsed since the principal events underlying Saxton's harassment charge had occurred, AT&T acted with considerable alacrity").

In both *Saxton* and *McKenzie*, the plaintiff reported the alleged harassment well after the incidents occurred. In neither case was the plaintiff forced to spend hours at a time in a vehicle cab with the harasser being called a monkey and a nigger and hearing about connections to white supremacists and white power groups. Although the Court of Appeals found that the delay in addressing the complaints was reasonable in those circumstances, this does not establish – as Kwik Trip argues – a general rule within the Seventh Circuit that employers can allow harassment to continue for weeks before addressing it. Here, Kwik Trip's harassment of Clacks was more serious and reported much sooner. Whether Kwik Trip acted sufficiently under these circumstances is a fact question for the jury, not a proper basis to dismiss Clacks's claims without a trial.

III.     **Clacks did not resign or refuse to return to work.**

As outlined in the Opening Brief, there are clear factual disputes regarding Kwik Trip's contention that Clacks was offered a position and refused to return to work. The District Court recognized a factual dispute regarding Kwik Trip's contentions, and a review

of Clacks's deposition testimony shows that Kwik Trip's assertions have always been disputed. Therefore, summary judgment was not appropriate.

### A. Kwik Trip mischaracterizes Clacks's deposition testimony.

A review of the record Kwik Trip cites to support its contention that Clacks refused to return to work quickly demonstrates that there are – at the least – disputed issues of fact that preclude accepting their contentions at the summary-judgment stage.

Kwik Trip argues that, beginning August 7, 2020, it engaged in multiple conversations with Clacks about him returning to work. [Appellee's Brief, 28.] Kwik Trip also asserts that it offered other positions which he declined. [*Id.*] Kwik Trip makes the bold but false assertion that, "At his deposition, Clacks did not dispute that Kwik Trip made him these offers or that he declined and did not return to work." [*Id.* at 29.] Kwik Trip is dead wrong on both parts.

Clacks wanted to return to work and was not given any legitimate offer of reemployment. [*See* Clacks Declaration (R. 56), ¶¶ 22-29.] Clacks consistently testified that he would do anything possible to return to his work, complaining that Kwik Trip put him on unpaid leave for too long before even attempting to let him return to making a paycheck. [*Id.*]

Kwik Trip cites Clack's Deposition at 144:2-22, but that testimony does not support Kwik Trip's conclusion. Kwik Trip was trying to get Clacks to admit that he was refusing to return to work because he felt unsafe, but that was not Clacks's testimony. In fact, Kwik Trip asked Clacks about those issues, and Clacks testified that Kwik Trip was wrong.

23 Q. Didn't you tell her that you couldn't come
24 back to work as a driver because you didn't feel safe?
25 A. No.
1 Q. So that's not what the recording is going to
2 show?
3 A. That's not what the recording is going to
4 show.

[Clacks Deposition, 144:23-45:4.] Later, Clacks is even clearer in his disagreement with Kwik Trip's position:

22 Q. Didn't you say, and I quote, "I'm not
23 returning to Kwik Trip"?
24 A. No, ma'am.

[*Id.* at 145:22-24.] It is hard to imagine a clearer dispute than that. It is also hard to imagine why Kwik Trip would characterize Clacks's testimony as it did, as Kwik Trip's characterizations are so clearly incorrect.

Clacks also did not refuse any offer of a replacement job position. As previously detailed, Kwik Trip placed Clacks on unpaid suspension, forbidding Clacks from returning to work while Kwik Trip was investigating its racist employees. [R. 56, Declaration of Stanford Clacks ¶ 23.] At the conclusion of that investigation in August 2020, Kwik Trip offered a severance package or, in the alternative, some vague possibility of returning to work at the company in some other capacity. [*Id.* ¶ 25.] But Kwik Trip never provided any offer of employment: no return date for his previous job, and no actual offer of any different role. [*Id.* ¶ 26.] Kwik Trip floated the idea of other roles, but every indication was that each would be a demotion and a pay cut. [*Id.*] Perhaps more importantly, by the end of the discussion, Kwik Trip's position was that Clacks had to either accept the severance

(settlement) offer or be terminated; any other employment with Kwik Trip was off the table. [*Id.* ¶ 29.]

Overall, Clacks pushed to return to work, but he was never given the opportunity to return. [*Id.* ¶ 27.] It was Kwik Trip's obligation to prove that it provided Clacks reasonable substitute employment, and it failed to do so. At a minimum, there is sufficient evidence for trial because Clacks competently testifies that he did seek to return to work and that there was no job offered to him (certainly not by the end of the negotiations). [*Id.* ¶¶ 22-29.]

Kwik Trip characterizes Clacks's requests for more information as "red herrings," but honestly, how is an employee supposed to consider a supposedly available employment position without being told what that offer is? Kwik Trip fails to explain how Clacks was supposed to report for work without this basic information, let alone demonstrate that it made a clear offer of employment. When Clacks pressed for details regarding returning to work, he was told that he needed to accept the severance offer or leave the company. [*Id.* ¶ 29.]

Kwik Trip argues that Clacks raising concerns for his safety was somehow equivalent to refusing to work. [*See* Appellee's Brief, 28; Clacks Deposition, 144:23-145:4.] This argument fails because Clacks firmly testified that he never refused to come back to work. [Clacks Deposition, 144:23-45:4, 22-24.] To accept Kwik Trip's characterization would require the Court to reject Clacks's deposition testimony, as is forbidden under the appropriate lens used at summary judgment.

On summary judgment, a court may not make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts; these are jobs for a factfinder. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255(1986); *Betaco, Inc. v. Cessna Aircraft Co.*, 32 F.3d 1126, 1138 (7th Cir.1994); *Sarsha v. Sears, Roebuck & Co.*, 3 F.3d 1035, 1041 (7th Cir.1993). The District Court must avoid "the temptation to decide which party's version of the facts is more likely true," *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003); *see also Joll v. Valparaiso Comty. Schs.*, 953 F.3d 923, 924 (7th Cir. 2020).

As outlined in the Opening Brief, the District Court recognized that there were clear disputes regarding Kwik Trip's assertion that Clacks refused to return to work. [R. 64, Opinion and Order, 8-9.] Despite this, the District Court overlooked these disputes and entered summary judgment. In doing so, the District Court failed to properly view the evidence in a light most favorable to the non-movant. Because the District Court failed to apply the correct standard, the judgment should be reversed and this cause remanded for trial.

### B. *Pollock* is easily distinguished from the present case.

The unpublished *Pollock* case cited by Kwik Trip is easily distinguished from the current case. In *Pollock*, the plaintiff was placed on ***paid*** administrative leave by his employer. *Pollock v. Manpowergroup US, Inc.*, 18-CV-107, 2019 WL 6117619, at *6 (E.D. Wis. Nov 18, 2019). When he did not return to work at Manpower's request, on May 23, 2017 (more than a month after Manpower's request that he return from paid leave), Manpower considered his failure to return a voluntary resignation. *Id.* Most importantly,

Pollock did not dispute (and thus admitted) that he was ordered to return to work and refused. *Id.* at *7.

In the present case, Clacks was on unpaid FMLA[4] leave when he made his complaint, and Clacks had been informed that he would need to return to work on July 31, 2020. [R. 56, Declaration of Stanford Clacks, ¶ 22.] He had agreed to return on that date. [*Id.*] Kwik Trip does not dispute either of these facts. Then, Kwik Trip decided to place Clacks on **unpaid** suspension as a result of his complaints, and it was Kwik Trip that extended his unpaid suspension into August 2020. [*Id.* ¶ 24.] In fact, Clacks testified that he contacted the investigator and urged her to wrap up the investigation so that he could end his unpaid suspension. [Clacks Deposition, 140:5-11.]

Unlike Pollock, Clacks vigorously disputes the contention that he resigned his position. When contacted by Kwik Trip's HR representative, he asked how Kwik Trip would be able to address his safety when he returned to work. [Clacks Deposition, 144:15-18.] This was a reasonable question to ask Kwik Trip's HR representative given that Nechkash and Roerkohl had been fired, and these two men had bragged about their connections to white supremacists and "white power" groups – thus causing Clacks to reasonably fear for his safety from those clear and unabashed racists. With the benefit of their own internal investigation that substantiated these issues, it should have come as no surprise to Kwik Trip that Clacks would have concerns. Instead of directly answering Clacks's question, Kwik Trip suggested that he may be able to return to other positions

---

[4] Family Medical Leave Act

with the company, but never told him enough about those positions for him to actually consider let alone accept them. When he tried to push for information or negotiate the severance offer, he was told that Kwik Trip would not negotiate any further and that his employment would be terminated if he did not accept the severance offer. [Clacks Declaration (R. 56), ¶ 29.]

Unlike in *Pollock*, Clacks has consistently denied that he refused to return to work and has testified that Kwik Trip made it impossible for him to do so. There are clearly disputed facts regarding Kwik Trip's purported offer to return Clacks to similar employment, foreclosing summary judgment.

## **CONCLUSION**

The District Court erred in applying the "sham affidavit" rule to Clacks's Declaration and in entering summary judgment dismissing Clacks's claims that he was subjected to a hostile work environment and retaliation. Clacks's testimony presents a compelling picture of Kwik Trip's misconduct that deserves to be addressed at trial. The District Court's summary judgment decision should be reversed and this cause remanded for Clacks to get the trial he deserves.

Dated: September 27, 2023  Respectfully Submitted:

/s/ Stephen C. Harkess

Stephen C. Harkess

Attorney for the Plaintiff-Appellant
Hanson Law Group LLP
1000 Hart Rd. Suite 300
Barrington, IL 60010
stephenharkess@hansonlawgrp.com
Direct: (720) 933-0444

## CERTIFICATION OF COMPLIANCE WITH TYPE-VOLUME LIMIT

This document complies with the type-volume limit of Fed. R. App. P. 32(a)(7)(B) as well as Circuit Rule 32(c) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 4,732 words.

This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word in 13 pt. Times New Roman font.

.

Respectfully Submitted:

/s/ Stephen C. Harkess

Stephen C. Harkess

**PROOF OF SERVICE**

The undersigned, counsel for the Plaintiff-Appellant, Stanford Clacks, hereby certifies that on September 27, 2023, the Brief and Required Short Appendix of Appellant were filed using ECF. Counsel for the Defendant-Appellant, Kwik Trip, Inc. is an ECF user and will be served electronically.

Respectfully Submitted:

/s/ Stephen C. Harkess

Stephen C. Harkess